IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

August 09, 2024

LAURA A. AUSTIN, CLERK
BY:
                s/A. Beeson
           DEPUTY CLERK

DEON CARTER,                    )
                                )
        Plaintiff,              )          Case No. 7:23-cv-00218
                                )
v.                              )          Hon. Robert S. Ballou
                                )          United States District Judge
J. HARRISON, *et al.*,          )
                                )
        Defendants.             )

## MEMORANDUM OPINION

Plaintiff Deon Carter, an inmate in the custody of the Virginia Department of Corrections, brings this lawsuit *pro se* alleging denial of his civil rights by prison staff at Keen Mountain Correctional Center ("Keen Mountain"). Carter asserts the following claims: (1) he was issued a retaliatory disciplinary charge; (2) staff denied him due process; and (3) staff was negligent in permitting violation of his civil rights. Defendants move for summary judgment on the grounds Carter failed to exhaust all available administrative remedies, as required by the Prison Litigation Reform Act. Summary judgment is **DENIED** as to Claim 1 because there is a dispute as to whether Carter was misled about the availability of administrative remedies to address his retaliation claim. Summary judgment is **GRANTED** as to Claims 2 and 3 because it is undisputed he failed to exhaust all available administrative remedies for either claim.

## I.    Background

During all relevant events Carter was an inmate at Keen Mountain and Defendants were employees of the facility. Dkt. 1 at ¶ 2. Carter alleges on August 19, 2022, Correctional Sergeant Deel confiscated five commercial photos from his cell without providing the required notice, preventing him from challenging the action. Dkt. 1 at ¶ 11. In response, Carter filed a grievance

against Deel. Dkt. 1-1 at 1. In the section of the grievance form titled "Suggested Relief," Carter provided two options for resolution: either Deel pay him five dollars (the cost of the photos) or, alternatively, Carter be given forty commercial photos previously disapproved by prison staff. Dkt. 1-1 at 1. In exchange Carter offered to drop the grievance. *Id.*

Shortly after filing the grievance, Carter met with Correctional Lieutenant Vance and Correctional Sergeant Deel. Dkt. 1 at ¶ 14. They told him if he did not withdraw his grievance, he would be charged with "Solicitation of Staff Misconduct." *Id.* They did not provide a concrete explanation for the charge, only indicating the warning came from management. *Id.* Carter did not withdraw his complaint. Dkt. 1 at ¶ 14; Dkt. 1-1 at 3. Later that day, Institutional Operations Manager Harrison issued Carter a disciplinary charge for "Conspiracy or making plans to commit/ Solicitation of Staff Misconduct" (the "solicitation charge"). Dkt. 1-1 at 3. Correctional Lieutenant Nichols approved the charge. *Id.*

Before the disciplinary hearing on his solicitation charge, Carter contends he told Harrison he intended to file a grievance against him for retaliating by issuing a false charge. Dkt. 21 at ¶ 4. Harrison responded "in no uncertain terms" that the retaliation issue was non-grievable, and that Carter could "only challenge" his action in the upcoming disciplinary charge hearing and the related appeals process. *Id.* Carter alleges he relied on these representations because Harrison directly supervised the person in charge of accepting grievances. *Id.* at ¶ 5.

A few days later, at the disciplinary charge hearing, Carter requested Vance and Deel be called as witnesses to Harrison's alleged retaliation, since they had warned him about the potential solicitation charge. Dkt. 21-1 at 2. Hearing Officer Lowe declined to call the witnesses, deeming their testimony irrelevant, and found Carter guilty, determining Carter's offer to withdraw his grievance in exchange for the disapproved photos was an attempt to coerce the staff

into violating Virginia Department of Corrections policy regarding "issuing unauthorized items to . . . inmate[s]." Dkt. 1 at ¶¶ 15–17; Dkt. 1-1 at 3.

Carter appealed Lowe's decision to Warden Hamilton and then to the regional operations chief, arguing his solicitation charge was retaliatory and Lowe violated his right to due process by not calling his requested witnesses. Dkt. 18-1 at 53–54, 57–58. Both upheld Lowe's decision, finding no procedural errors. *Id.* The parties agree Carter appealed the disciplinary hearing outcome for his solicitation charge through all available levels. Dkt. 1 at ¶ 20; Dkt. 18 at ¶ 19.

Roughly two months after receiving the final decision denying his appeal, Carter learned—contrary to Harrison's prior assertion—staff retaliation was a grievable issue. Dkt. 21 at ¶¶ 4, 8. Carter then filed a complaint and two grievances alleging retaliation by Harrison. Dkt. 21-3. Prison staff rejected them because the mandated filing period had since long expired. *Id.*

Carter subsequently filed the present suit under 42 U.S.C. § 1983, alleging the Keen Mountain prison staff deprived him of his civil rights. He makes three claims in his Complaint: (1) Harrison filed a false disciplinary charge against him in retaliation for filing a grievance; (2) Lowe denied him due process by not calling his witnesses and Hamilton similarly denied him due process by upholding Lowe's decision; and (3) Vance, Deel, Nichols, Lowe, Harr, and Hamilton were negligent in failing to protect him from Harrison's actions. Dkt. 1 at 1.

## II.    Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits" filed by the parties. *Celotex Corp. v. Catrett ex rel. Catrett*, 477 U.S. 317, 322 (1986). "A dispute is genuine if a

3

reasonable jury could return a verdict for the nonmoving party." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). A fact is material if "its existence or non-existence could result in a different jury verdict." *JKC Holding CO. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

At the summary judgment stage, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to come forward and establish a specific material fact in dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). In determining if a genuine issue of material fact exists, courts view the facts and draw all reasonable inferences in favor of the nonmovant. *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013).

"Courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. However, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 783 (4th Cir. 2021).

## III.   Analysis

Defendants move for summary judgment arguing Carter failed to exhaust his administrative remedies before filing suit as required by the Prison Litigation Reform Act ("PLRA"). The PLRA was passed in 1990 to combat high levels of frivolous prisoner lawsuits by

prohibiting prisoners from bringing a legal action concerning prison conditions under any federal law "until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a). The exhaustion requirement is designed to "reduce the quantity and improve the quality of prisoner suits [and] afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 516–17 (2002). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Id.* at 532. The PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules . . . ." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). A prisoner's failure to follow agency protocol, intentionally or otherwise, is an affirmative defense to legal action brought against correctional facilities. *See id.* at 95.

While "strict," the proper exhaustion requirement does not create an "absolute bar to prison litigation in federal court." *Griffin v. Bryant*, 56 F.4th 328, 335 (4th Cir. 2022). There is an exception to the proper exhaustion requirement "built-in" to the text of the PLRA: prisoners need only exhaust those remedies that are "'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

The Supreme Court has identified three circumstances qualifying for this exception, though only one applies here[1]: administrative remedies are not available to prisoners where "prison administrators thwart inmates from taking advantage of a grievance process through

---

[1] The two other circumstances meeting this exception are: (1) where prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates" rendering the administrative remedy "a simple dead end"; and (2) where the system for seeking remedy is "so opaque" "no ordinary prisoner can discern or navigate it" making the system "practically . . . incapable of use." Ross, 578 U.S. at 643–44.

5

machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 634. Referencing several appellate decisions that "addressed a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures," the Supreme Court held "such interference with an inmate's pursuit of relief renders the administrative process unavailable" and thereby negates the PLRA's proper exhaustion requirement. *Id.* at 644. *See also Brown v. Croak* 312 F.3d 109, 113 (3d Cir. 2002) (holding if prison staff misled plaintiff, his administrative remedies were not available); *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (holding the remedies prison staff prevented plaintiff from using were not available).

### A. VDOC Grievance Procedure

Keen Mountain is governed by the Virginia Department of Corrections ("VDOC") policies. Dkt. 18 at 1. VDOC Operating Procedure 866.1, titled the Inmate Grievance Procedure ("Grievance Procedure"), describes the remedies inmates must properly exhaust before suing under federal law. Va. Dep't of Corr., Operating Procedure 866.1 (2023).

Under the Grievance Procedure, when complaints arise, including complaints of retaliation, inmates must first seek resolution with staff verbally. *Id.* at §§ (I)(D)(1), (III)(B)(1)(a)(iii). If the issue is not resolved to the inmate's satisfaction, he or she may file a "Written Complaint," which must be received within fifteen days of the incident or discovery thereof. *Id.* at § (I)(D)(2). The staff then has fifteen days to provide a response. *Id.* at § (I)(D)(3)

If staff does not respond within the fifteen-day period, or the response does not satisfactorily settle the matter, the inmate may submit a "Regular Grievance," which must be filed within thirty days of the original incident.[2] *Id* at § (I)(D)(4). Staff then has two days to

---

[2] Though some exceptions apply to this step, none are relevant to this case. Va. Dep't of Corr., Operating Procedure 866.1§ (I)(D)(4) (2023).

accept or reject the Regular Grievance based on mandated criteria (e.g. timeliness of filing). *Id.* at § (I)(D)(5).

When a Regular Grievance is accepted, staff has thirty days to investigate and resolve the grievance. *Id.* at § (I)(D)(6). If after thirty days, the issue is still not resolved to the inmate's satisfaction, he or she has five days to file an appeal. *Id.* at § (I)(D)(7). The appeal begins a twenty-day period for the staff to review the situation and respond—this is the final step in the Inmate Grievance Procedure. *Id.* at § (I)(D)(8)–(9). If unsatisfied with the outcome of the appeal, the inmate may seek judicial relief, having exhausted all available administrative remedies. *Id.*

It is important to note the Grievance Procedure is entirely separate from the process for appealing the outcome of disciplinary hearings. *Id*. § III(B)(1)(b)(i). Unlike in the Grievance Procedure, fully appealing the outcome of a disciplinary hearing does not exhaust an inmate's administrative remedies for the purposes of the PLRA, nor is such an outcome otherwise subject to judicial review. *Id.*

### B.  Carter's Attempts to Exhaust

Carter contends he exhausted all available administrative remedies with respect to all claims by fully appealing his solicitation charge. Dkt. 1 at 6. This is incorrect. As Defendants correctly note, the disciplinary hearing appeals process is distinct from the Grievance Procedure, and fully appealing a disciplinary charge does not exhaust an inmate's administrative remedies. *See Allen v. Waldron*, No. 7:21-CV-00214, 2023 WL 4980210, at *4 (W.D. Va. Aug. 3, 2023).

Defendants argue that, because Carter failed to exhaust his administrative remedies through the Grievance Procedure, he is barred by the PLRA from bringing suit on any of his 42 U.S.C. § 1983 claims. Dkt. 18 at 12. In support, they offer an affidavit from Harr, the institutional grievance coordinator, stating a review of Carter's file showed no "Informal

Complaints, Regular Grievances, rejected Regular Grievances or Emergency Grievances"
regarding Claim 1, Harrison's alleged retaliation, Claim 2, Lowe's and Hamilton's alleged denial
of due process, or Claim 3, Vance, Deel, Nichols, Lowe, Harr, and Hamilton's alleged failure to
protect Carter from Harrison's actions. Dkt. 18 at ¶¶ 20–33.

    i.    **Claim 1: Retaliation**

In their motion for summary judgment, Defendants' raise the affirmative defense that
Carter failed to properly exhaust his administrative remedies. Dkt. 18 at 12. Thus, Carter, as the
non-moving party, has the burden to show there is a genuine dispute of material fact as to
whether he exhausted all available administrative remedies before seeking judicial review. With
regard to Claim 1, I find there is such a dispute.

The record contradicts Harr's affidavit. It shows Carter did file an Informal Complaint
regarding Harrison's alleged retaliation, which was stamped received by both the Institutional
Ombudsman and the Grievance Coordinator's office. He then filed two Regular Grievances on
the same subject, both signed by Harr. Dkt. 21-3. However, because the grievances were filed
after the thirty-day filing period, Harr appropriately rejected them. *Id.* Proper exhaustion
demands inmates comply with all deadlines and other administrative rules. *Woodford*, 548 U.S.
at 95. Accordingly, summary judgment is appropriate due to lack of proper documentation,
unless Carter's circumstances qualify for an exception. *See Ross*, 578 U.S. at 643–44.

The relevant question is whether Harrison's misrepresentations thwarted Carter's ability
to use his administrative remedies, rendering them unavailable and thus qualifying Carter for an
exception to the proper exhaustion requirement under *Ross*.[3] *Id.* This Court has previously held

---

[3] Carter does not specifically use the "availability" language, but I construe his arguments
liberally and find this is the substance of his position. *See Estelle v. Gamble*, 429 U.S. 97, 106
(1976); Dkt. 21-1 at 3–4.

misrepresentations by prison staff about the availability of administrative remedies preclude summary judgment. For example, in *Allen v. Waldron*, the Court found there was a genuine dispute whether administrative remedies were available to Allen, an inmate at Keen Mountain, after staff allegedly misled him to believe claims of retaliation should be handled through the disciplinary charge appeals process. *Allen*, 2023 WL 4980210, at *4.

Prison officials issued two disciplinary charges against Allen after an adverse incident with a pair of guards. *Id.* at *3. When Allen informed staff he intended to challenge the charges as retaliation, they repeatedly steered him toward the disciplinary charge appeals process. *Id.* at *4. In one instance, an official informed him that "any issues" involving the disciplinary charges could be addressed in the disciplinary charge appeals process. *Id.* Allen alleged he relied on the staff's representations and pursued the appeals process in lieu of the Grievance Procedure, ultimately unsuccessfully. *Id.* Though Allen later filed a Regular Grievance alleging retaliation, he did so after the filing period had elapsed. *Id.* at *4. In denying Waldron's motion, the Court found there were "disputes of fact as to whether the Offender Grievance Procedure was actually available to inmates who wished to pursue a retaliation claim related to a disciplinary action or whether Allen was misled to believe that such claims should be raised in an appeal from a disciplinary action." *Id.*

Similarly, in *Ofori v. Fleming*, this Court denied Defendant's motion for summary judgment because prison staff "repeatedly told [Ofori] he could not file a grievance alleging that a disciplinary charge was retaliatory." *Ofori v. Fleming*, No. 7:20-CV-00345, 2022 WL 791645, at *11 (W.D. Va. Mar. 11, 2022). The misleading assertions by staff created a genuine question as to whether Ofori had been thwarted in his efforts to exhaust all administrative remedies. *Id.*

Unlike Allen and Ofori, who were repeatedly misled by multiple staff members, Carter alleges being misled by only one prison official, but I am not prepared to draw an arbitrary line as to how many times an inmate must double-check the assertions of prison authority figures. *See Davis v. Fernandez*, 798 F.3d 290, 296 (5th Cir. 2015) (holding inmate was "entitled to rely on the representations of his jailers"). Furthermore, Harrison, the individual who allegedly misled Carter about the Grievance Procedure, was not a low-level employee, but rather held a significant position of authority as Keen Mountain's Institutional Operations Manager, and the direct supervisor to the Institutional Grievance Coordinator, giving him substantial credibility on the subject. Dkt. 21 at ¶ 5. Supporting the inference of credibility, Carter appears to have placed complete trust in Harrison's misrepresentations by pursuing only the disciplinary hearing appeals process, thereby losing the opportunity use the Grievance Procedure.

Carter, Allen, and Ofori share significant commonalities. All three informed prison staff they wanted to seek redress for alleged retaliation through the Grievance Procedure. All three were misled by staff to believe retaliation was non-grievable, and as a result, all three failed to submit the appropriate documents in the mandated filing period, preventing their retaliation complaints from reaching judicial review through the normal channels.

Carter's uncontested allegation that Harrison—a prison authority figure—directly misled him about grieving retaliation, and Carter's seeming good faith reliance on this guidance, create a genuine dispute of material fact as to whether Carter exhausted all available administrative remedies before seeking judicial review. *See Ross*, 578 U.S. at 643–44. Accordingly, summary judgment is not appropriate as to Claim 1.

ii.      **Claims 2 and 3: Denial of due process and negligence**

As to Plaintiff's second and third claims, Defendants similarly argue Carter failed to exhaust his administrative remedies. While there is a genuine dispute of material fact about exhaustion in his first claim, Carter has not shown there is a similar dispute of fact as to Claims 2 or 3.

Prisoners must properly exhaust all available administrative remedies before bringing suit regarding any conditions relating to prison life. *See Woodford*, 548 U.S. at 90; *Porter*, 534 U.S. at 532. As discussed above, timely filing of documents through the Grievance Procedure is one of the key requirements for proper exhaustion by inmates of the Virginia Department of Corrections. There is nothing in the record suggesting Carter filed any of the required documents addressing the issues he brings in his second and third claims, let alone that he appealed the issues through the Grievance Procedure, as he was also required to do by the PLRA. 42 U.S.C.A. § 1997e(a).

No extenuating circumstances suggest the Grievance Procedure was unavailable to Carter as to Claims 2 and 3. Carter does not allege he attempted to grieve the other defendants' actions, nor does he allege anyone misled him about his ability to grieve these concerns. He is plainly aware of how to use the Grievance Procedure, given this case originates from his objection to the prison staff's handling of his Regular Grievance concerning the confiscation of commercial photos. As to Claims 2 and 3, I find Carter did not properly exhaust all available administrative remedies as required by the PLRA and therefore summary judgment is appropriate.

**IV.      Conclusion**

Considering the record as a whole and drawing all inferences in the light most favorable to the plaintiff, a reasonable jury could find Carter exhausted all available administrative

remedies in relation to Claim 1. Accordingly, Defendants' motion is **DENIED** as to Claim 1.

However, a reasonable jury could not conclude Carter exhausted all available administrative

remedies in relation to Claims 2 and 3. Therefore, the Motion for Summary Judgment is

**GRANTED** as to Claims 2 and 3.

      An appropriate order shall follow.

                                 Entered:  August 8, 2024

                                 *Robert S. Ballou*

                                 Robert S. Ballou
                                 United States District Judge